## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH MINARIK, Individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>PAYCOM SOFTWARE, INC., CHAD RICHISON, and CRAIG BOELTE,<br><br>     Defendants. | **Case No:** CIV-24-14-J<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joseph Minarik ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Paycom Software, Inc. ("Paycom" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired Paycom common stock between May 3, 2023 and November 1, 2023, inclusive (the "Class Period") and those who purchased Paycom call options or sold put options during the Class Period, including any Paycom common stock purchased or otherwise acquired in

connection with the exercise of such options. Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Paycom securities during the Class Period and was economically damaged thereby.

7.      Defendant Paycom purports to be a "leading provider of a comprehensive, cloud-based human capital management ("HCM") solution delivered as "Software-as-a-Service" ("Saas").

2

8.    Defendant Paycom is incorporated in Delaware and its head office is located at 7501 W. Memorial Road, Oklahoma City, Oklahoma 73142. Paycom's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "PAYC"

9.    Defendant Chad Richison ("Richison") founded the Company and has served as the Company's Chief Executive Officer ("CEO"), President, and Chairman of the Board of Directors (the "Board") since 1998.

10.    Defendant Craig E. Boelte ("Boelte") has served as the Company's Chief Financial Officer since February 2006.

11.    Defendants Richison and Boelte are collectively referred to herein as the "Individual Defendants."

12.    Each of the Individual Defendants:

    (a)    directly participated in the management of the Company;

    (b)    was directly involved in the day-to-day operations of the Company at the highest levels;

    (c)    was privy to confidential proprietary information concerning the Company and its business and operations;

    (d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    (e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

13.    Paycom is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Paycom under *respondeat superior* and agency principles.

15.    Defendant Paycom and the Individual Defendants are collectively referred to herein as "Defendants."

### SUBSTANTIVE ALLEGATIONS
#### Background

16.    On July 6, 2021, Paycom released a press release entitled "Paycom Launches Beti, an Industry-First Employee-Driven Payroll Solution." (the "Beti Announcement"). Paycom characterized Beti (which stands for "Better Employee Transaction Interface") as the "industry's first self-service payroll technology allowing employees to do their own payroll, improving data accuracy, oversight and the user experience for businesses and their employees on each payroll cycle."

17.    In the Beti Announcement, Defendant Richison stated "[w]ith Beti, employees do their own payroll[.] It should have always been this way, but the tech didn't exist. Today it does, and employers and employees will win with it."

**Materially False and Misleading**
**Statements Issued During the Class Period**

18.     The Class Period starts on May 3, 2023. On May 2, 2023, after market hours, the Company held its Earnings Call for the period ended March 31, 2023 ("the 1Q23 Earnings Call"). On the 1Q23 Earnings Call, Defendant Boelte stated "[f]or fiscal 2023, we are raising our outlook and *now expect revenue in the range of $1.713 billion to $1.715 billion or approximately 25% year-over-year growth at the midpoint of the range*." (Emphasis added).

19.     The statement in ¶ 18 was materially false and misleading because the expected revenue range presented by Defendant Boelte was unlikely due to Beti, which is cannibalizing a portion of the Company's products and revenues.

20.     On the 1Q23 Earnings Call, Defendant Richison extolled the purported benefits of Beti. He noted that Beti  "*continues to be a key differentiator in the market* with Employee Self Service Payroll continuing to drive strong client additions. The industry transformation to more efficient HCM and payroll processes is accelerating. *And now with Beti, payroll processes can be automated to deliver perfect payroll*." (Emphasis added).

21.     Defendant Richison further stated "[u]sing Beti, employees do their own payroll. *Employee usage is a key differentiator and new clients are coming to Paycom for exactly that*." (Emphasis added). Additionally, he stated "*[o]ur product and go-to-market strategy are working*. I just returned from our Annual President's Club Meeting with our top salespeople. *And I couldn't be more excited about the tone of the conversations and enthusiasm for our product especially around employee usage in Beti*." (Emphasis added).

22.     The statements in ¶¶ 20 and 21 were materially false and misleading because they extolled Beti's purported benefits while omitting that it was also cannibalizing the Company's services and revenues.

23.     On May 4, 2023, when Paycom filed with the SEC its quarterly report on Form 10-Q for the period ended March 31, 2023 (the "1Q23 Report"). Attached to the 1Q23 Report

were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Richison and Boelte attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

24.    The 1Q23 Report provided the following, in pertinent part, regarding the Company's growth outlook:

> As a result of our significant revenue growth and geographic expansion, we are presented with a variety of opportunities and challenges. Our payroll application is the foundation of our solution and all of our clients are required to utilize this application in order to access our other applications. ***Consequently, we have historically generated the majority of our revenues from our payroll applications, although our revenue mix has evolved and will continue to evolve as we develop and add new non-payroll applications to our solution***. We believe our strategy of focusing on increased employee usage is key to long-term client satisfaction and client retention. Client adoption of new applications and client employee usage of both new and existing applications have been significant factors in our revenue growth, and we expect the continuation of this trajectory will depend, in part, on the introduction of applications to our existing client base that encourage and promote more employee usage. ***For example, in 2021, we launched our industry-first Beti technology, which further automates and streamlines the payroll process by empowering employees to do their own payroll***.

(Emphasis added).

25.    This statement in ¶ 24 was materially false and misleading because it omitted any discussion of how Beti was leading to cannibalization of the Company's services and revenues at the time the statement was made, which would lead to slower than projected growth for the 2023 fiscal year, and lower-than-expected growth in the 2024 fiscal year.

26.    The 1Q23 Report incorporated by reference the risk factors identified in its annual report on Form 10-K that it had filed with the SEC on February 16, 2023 for the period ended December 31, 2022 (the "2022 Annual Report").

27.    The 2022 Annual Report omitted any discussion regarding Beti and cannibalization of services and revenues.

28.    The 2022 Annual Report contained the following risk disclosure on guidance:

We have released, and may continue to release, guidance in our earnings conference calls, earnings releases, or otherwise, regarding our future performance, which represents our estimates as of the date of release. This guidance, which includes forward-looking statements, has been and will be based on projections prepared by our management. These projections are not prepared with a view toward compliance with published guidelines of the American Institute of Certified Public Accountants, and neither our registered public accountants nor any other independent expert or outside party compiles or examines the projections. Accordingly, no such person expresses any opinion or any other form of assurance with respect to the projections.

***Projections are based upon a number of assumptions and estimates that, while presented with numerical specificity, are inherently subject to significant business, economic, and competitive uncertainties and contingencies, many of which are beyond our control***. Projections are also based upon specific assumptions with respect to future business decisions, some of which will change.

***The principal reason that we release guidance is to provide a basis for our management to discuss our business outlook with analysts and investors***. We do not accept any responsibility for any projections or reports published by any third parties.

***Guidance is necessarily speculative in nature, and it can be expected that some or all of the assumptions underlying the guidance furnished by us will vary significantly from actual results***. Accordingly, our guidance is only an estimate of what management ***believes is realizable as of the date of release***. Actual results may vary from our guidance and the variations may be material. In light of the foregoing, investors are urged not to rely upon our guidance in making an investment decision regarding our common stock.

Any failure to successfully implement our operating strategy or the occurrence of any of the events or circumstances set forth in this "Risk Factors" section in this Form 10-K could result in the actual operating results being different from our guidance, and the differences may be adverse and material.

(Emphasis added).

29.    This statement, incorporated by reference in the 1Q23 Report, was materially false and misleading because while it is broadly understood that actual operating results may differ from guidance, Paycom did not have a reasonable basis to project revenues of $1.713 billion to $1.715 for the 2023 fiscal year because of issues it knew internally with cannibalization of the Company's services and revenues.

30.    On August 1, 2023, after market hours the Company held its Earnings Call for the period ended June 30, 2023 ("the 2Q23 Earnings Call").

31.    Defendant Richison provided the following on Beti:

On the product front, the ROI that our clients are achieving from Beti is unquestionable. *We recently commissioned a total economic impact study from Forrester Consulting that quantified the savings from using Paycom and Beti, including a 90% reduction in labor for payroll processing and saving HR and accounting teams more than 2600 hours per year*.

*Companies that are not adopting Beti are missing out on a significant opportunity for savings from this structural change to how payroll should be done*. With millions of employees already doing their own payroll and organizations seeing incredible ROI with Beti, there's no reason not to adopt it. The product is working as we anticipated, and our messaging is resonating. So we will remain discipline in promoting the power of Beti to new and existing clients.

(Emphasis).

32.    The statement in ¶ 31 was materially false and misleading because Defendant Richison extolled the savings Beti provided customers while omitting that an end result of these savings was that Paycom's services and revenue would become cannibalized as a result of Beti's success.

33.    Regarding revenue guidance for the upcoming third quarter of 2023, Defendant Boelte stated the Company "*[expects] total revenues in the range of $410 million to $412 million representing a growth rate over the comparable prior year period of approximately 23% at the midpoint of the range*." (Emphasis added).

34.    Regarding the 2023 fiscal year outlook, Defendant Boelte stated "[f]or fiscal 2023, we are raising our outlook *and now expect revenue in the range of $1.715 billion to $1.717 billion* or approximately 25% year-over-year growth at the midpoint of the range." (Emphasis added).

35.     On August 3, 2023, Paycom filed with the SEC its quarterly report on Form 10-Q for the period ended June 30, 2023 (the "2Q23 Report"). Attached to the 2Q23 Report were certifications pursuant to SOX signed by Defendants Richison and Boelte attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

36.     The 2Q23 Report provided an identical disclosure regarding the Company's growth outlook to the statement in ¶ 24.

37.     Accordingly, the disclosure in the 2Q23 Report was materially false and misleading for the reasons discussed in ¶ 25.

38.     Like the 1Q23 Report, the 2Q23 Report incorporated by reference the risk factors identified in the 2022 Annual Report.

39.     As discussed in ¶ 29, the 2022 Annual Report's risk disclosure on the accuracy of projections (contained in ¶ 28) was materially false and misleading because Paycom did not have a reasonable basis to provide projections of $1.715 billion to $1.717 billion (as discussed in the 2Q23 Earnings Call) because Beti was cannibalizing the Company's services and revenues at the time the 2Q23 Report was filed with the SEC.

40.     Further, the 2Q23 Report omitted that Beti was cannibalizing the Company's services and revenues.

41.     The statements contained in ¶¶ 18, 20-21, 23-24, 26, 28-29, 30, 31, 33, 34, 35, 36, 38, and 40 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Paycom's

Beti product led to cannibalization of the Company's services and revenues; (2) Paycom knew but failed to disclose that Beti was leading to cannibalization of the Company's services and revenues, and failed to warn of cannibalization as a general risk; (3) as a result of cannibalization of revenue, Paycom missed its expected 3Q23 revenue and would have to revise its expected 2023 Revenues; (4) the cannibalization issue resulted in projected 2024 year-over-year revenue growth to between 10% and 12%, well below expectations; and (5) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH EMERGES

42.    On October 31, 2023, after market hours, Paycom filed with the SEC a current report on Form 8-K announcing its financial results for the period ended September 30, 2023 ("3Q23").

43.    Also on October 31, 2023, after market hours, Defendants Richison and Boelte participated in the Company's Third Quarter of 2023 ("3Q23") earnings call (the "3Q23 Earnings Call").

44.    On the 3Q23 Earnings Call, Defendants shocked the market with the announcement that Beti was cannibalizing a portion of the Company's services and revenues, which led it to revise its guidance. Defendant Boelte provided the following:

> Now let me turn to guidance. Throughout 2023, we have been seeing moderating upside to our guidance model, which corresponded with increases embedded usage and macro headwinds from inflation that may impact each client differently. ***Now that more clients are achieving the ROI that Beti has to offer, it has eliminated certain billable items, which is cannibalizing a portion of our services and unscheduled revenues***.

(Emphasis added).

45.    This issue led the Company to miss its expected revenues for 3Q23. For 3Q23, the

Company reported revenue of $406.3 million, lower than its prior projection of $410-$412 million.

46.    This underwhelming quarterly result surprised analysts. According to *Investor's Business Daily*, which released an article after market hours on November 1, 2023 entitled "Paycom Stock Plunges on Q3 Revenue Miss, Weak, 2024 Outlook" (the "Investor's Business Daily Article"), analysts had expected revenue of "$411 million for the period ended Sept. 30."

47.    The cannibalization of services and revenues caused the Company to lower its projected 2023 revenues from the previously projected range of $1.715-$1.717 billion. On the 3Q23 Earnings Call, Defendant Boelte stated "[w]ith our Q3 results and our Q4 guidance, we now expect fiscal 2023 revenues ***to be in the range of $1.679 billion to $1.684 billion*** or approximately 22% year-over-year growth at the midpoint of the range." (Emphasis added).

48.    As Defendant Boelte admitted, the Company knew or should have known that Beti would lead to cannibalization of services revenue. He stated that "***[w]ith 10 months of data from increased Beti usage***, we are incorporating the impact our clients' ROI achievement has on our model." (Emphasis added).

49.    The damage wasn't contained to the present year. Defendant Boelte provided the following on Beti's expected impact for Fiscal 2024's year-over-year revenue growth:

> Our mission is to ensure and achieve client value and that is our focus. Our guidance for the next 15 months assumes, the impact from the strategic revenue decisions, we are and will be making. ***As a result, we believe it is prudent for us to set expectations, for 2024 year-over-year revenue growth, of between 10% and 12%. We'll have more visibility when we provide formal guidance in early February***.

(Emphasis added).

50.    The Investor's Business Daily Article highlighted how analysts were surprised by this guidance. It highlighted a Jefferies analyst's report, which said "[w]hile investors were

braced for soft results and guidance, *PAYC shocked everyone* by providing an initial 2024 outlook for 10% to 12% rev growth[.] Management largely attributed the second half weakness and 2024 outlook to cannibalization of services revenue." (Emphasis added).

51.     In the following exchange with defendants Richison and Boelte, Barclays analyst Raimo Lenschow asked about the Company's awareness of the Beti service posing issues to the Company's business:

> Raimo Lenschow: I'm trying to get a little bit more clarity on the Beti impact. *So if I'm listening to you, it sounds like Beti is the main problem here or the main issue for what's going on. But it's kind of – but it has been launched for a while*. So, why do we see the impact like so dramatically now? And maybe you can link it in with the strategic revenue decisions for next year. Is that kind of Beti or do we need to think broader here? Thank you.

> Defendant Richison: Sure. I mean, first, in regards to the first one, *Beti usage has continued to increase throughout the year for us, and that continues to increase*. We've been pretty close to guidance almost every quarter this year. And so Craig kind of talked about that moderating throughout the year. *And we're seeing what accelerated impact Beti has*. And then, Craig, you can add kind of the...

> Defendant Boelte: Yes. So Raimo, I mean, it impacted it in a couple of different areas. I mean, obviously, the unscheduled runs to correct payrolls and some of those service revenues that, we have as it relates to correcting payrolls, those numbers were moderating, and they typically come in towards the end of the quarter.

> So that's part of the impact for the quarter as well as the CRR impact, which I called out on the prepared remarks. And then also the pre-employment services came in a little light. So it was really a combination of all four of those items.

(Emphasis added).

52.     On this news about Beti cutting into Paycom's revenues, analysts downgraded Paycom's stock. On November 1, 2023, before market hours, *Barrons* released an article (which it subsequently updated during market hours) entitled "Paycom Software sinks 37% as Analysts Downgrade the Stock After Revenue Cut." It stated, in pertinent part:

A guidance slash sent shares of Paycom Software spiraling and prompted several Wall Street firms to lower their recommendations on the provider of cloud-based human capital management software.

\*        \*        \*

On Tuesday, Paycom reported third-quarter adjusted earnings that beat expectations but revenue that missed, while fourth-quarter guidance was below consensus. For the full year, Paycom said it expects revenue in the range of $1.68 billion to $1.684 billion, below analysts' estimates of $1.714 billion, and down from a prior call for $1.715 billion to $1.717 billion.

Adjusted earnings before interest, tax, depreciation, and amortization was forecast at between $712 million to $717 million, lower than an earlier range of $722 million to $724 million. Analysts were expecting $723.3 million.

***"The main culprit of the lowered guidance is Beti,"*** wrote William Blair analysts led by Matthew Pfau, who lowered their rating on the stock to Market Perform from Outperform. ***On the earnings call, management defined Beti as a "do-it-yourself payroll for employees," that has prevented errors "which would otherwise be billable items."***

\*        \*        \*

Oppenheimer analysts led by Brian Schwartz cut their rating on the stock to Perform from Outperform and removed their $400 price target, citing growth concerns, while Mizuho analysts led by Siti Panigrahi maintained a Neutral rating but lowered their price target to $185 from $325.

(Emphasis added).

53.     On this news, the price of Paycom stock plunged $94.28 per share, or 38.38%, to close at $150.69 per share on November 1, 2023, on unusually heavy trading volume, damaging investors.

54.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

55.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Paycom securities publicly traded on the NSYE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Paycom, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

56.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Paycom securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

57.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

58.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

59.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of Paycom;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Paycom to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Paycom securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

60.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

61.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Paycom shares met the requirements for listing, and were listed and actively traded on NYSE, an efficient market;

- As a public issuer, Paycom filed periodic public reports;

- Paycom regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- Paycom's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- Paycom was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

62.     Based on the foregoing, the market for Paycom securities promptly digested current information regarding Paycom from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

63.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

64.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.    This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

66.    During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

67.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Paycom securities during the Class Period.

68.    Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Paycom were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Paycom, their control over, and/or receipt and/or modification of Paycom's allegedly materially misleading statements, and/or their associations with the Company which made them privy to

confidential proprietary information concerning Paycom, participated in the fraudulent scheme alleged herein.

69.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Paycom personnel to members of the investing public, including Plaintiff and the Class.

70.    As a result of the foregoing, the market price of Paycom securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Paycom securities during the Class Period in purchasing Paycom securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

71.    Had Plaintiff and the other members of the Class been aware that the market price of Paycom securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Paycom securities at the artificially inflated prices that they did, or at all.

72.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

73.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members

of the Class for substantial damages which they suffered in connection with their purchase of Paycom securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

74.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

75.    During the Class Period, the Individual Defendants participated in the operation and management of Paycom, and conducted and participated, directly and indirectly, in the conduct of Paycom's business affairs. Because of their senior positions, they knew the adverse non-public information about Paycom's false financial statements.

76.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Paycom's financial condition and results of operations, and to correct promptly any public statements issued by Paycom which had become materially false or misleading.

77.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Paycom disseminated in the marketplace during the Class Period concerning Paycom's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Paycom to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Paycom within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Paycom securities.

78.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Paycom.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)    awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: January 5, 2024                                      Respectfully submitted,


                                                           _____
                                                           William B. Federman, OBA #2853
                                                           **FEDERMAN & SHERWOOD**
                                                           10205 N. Pennsylvania Ave.
                                                           Oklahoma City, OK  73120
                                                           Telephone: (405) 235-1560
                                                           Facsimile: (405) 239-2112
                                                           wbf@federmanlaw.com

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
       lrosen@rosenlegal.com

*Counsel for Plaintiff*

*\*Pro Hac Vice* application forthcoming

## CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against Paycom Software, Inc. (NYSE: PAYC), and their current and former officers, and others in connection with the purchase and sale of securities issued by Paycom Software, Inc.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1.  I have reviewed a complaint against Paycom Software, Inc. and certain of their officers and directors and I authorize The Rosen Law Firm, P.A. to file the complaint and file a lead plaintiff motion on my behalf.

2.  I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3.  I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4.  The following is a list of all of the purchases and sales I have made in Paycom Software, Inc. common stock and options during the Class Period set forth in the complaint. I have made no transactions during the class period in the securities that are the subject of this lawsuit except those set forth below.

    See Attached

5.  I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except for the following company(ies):

6.  I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this day ___1/5/2024_____.

Signature:

Name: Joseph Minarik

24BC24462B4F4C6...

1

Purchases:

| Date | Security | Quantity | Price |
|---|---|---|---|
| 8/31/2023 | Option Assignment | 100 | $280.00 |
| 9/5/2023 | Option Assignment | 300 | $280.00 |
| 9/21/2023 | Option Assignment | 100 | $280.00 |
| 9/30/2023 | Option Assignment | 100 | $280.00 |
| 10/2/2023 | Option Assignment | 1000 | $280.00 |
| 10/2/2023 | Option Assignment | 100 | $280.00 |
| 10/5/2023 | Option Assignment | 100 | $280.00 |
| 10/5/2023 | Option Assignment | 200 | $280.00 |
| 10/18/2023 | Option Assignment | 500 | $280.00 |
| 10/18/2023 | Option Assignment | 800 | $280.00 |
| 10/18/2023 | Option Assignment | 200 | $280.00 |
| 10/18/2023 | Option Assignment | 100 | $280.00 |
| 10/18/2023 | Option Assignment | 600 | $280.00 |
| 10/19/2023 | Option Assignment | 100 | $280.00 |
| 10/19/2023 | Option Assignment | 600 | $280.00 |
| 10/21/2023 | Option Assignment | 100 | $280.00 |
| 11/1/2023 | Option Assignment | 100 | $290.00 |
| 11/1/2023 | Option Assignment | 100 | $290.00 |
| 11/1/2023 | Option Assignment | 5 | $290.00 |
| 11/1/2023 | Option Assignment | 61 | $290.00 |
| 11/1/2023 | Option Assignment | 1000 | $280.00 |
| 11/1/2023 | Option Assignment | 100 | $280.00 |
| 11/1/2023 | Option Assignment | 200 | $280.00 |
| 11/1/2023 | Option Assignment | 1100 | $280.00 |

| 11/1/2023 | Assignment Option | 188 | $280.00 |
| 11/1/2023 | Assignment Option | 88 | $280.00 |
| 11/1/2023 | Assignment Option | 40 | $280.00 |
| 11/1/2023 | Assignment Option | 184 | $280.00 |
| 11/1/2023 | Assignment Option | 1000 | $280.00 |
| 11/1/2023 | Assignment Option | 1 | $280.00 |
| 11/1/2023 | Assignment Option | 27 | $280.00 |
| 11/1/2023 | Assignment Option | 5 | $280.00 |
| 11/1/2023 | Assignment Option | 100 | $280.00 |
| 11/1/2023 | Assignment Option | 100 | $280.00 |
| 11/1/2023 | Assignment Option | 101 | $280.00 |
| 11/1/2023 | Assignment Option | 27 | $280.00 |
| 11/1/2023 | Assignment Option | 100 | $280.00 |
| 11/1/2023 | Assignment Option | 100 | $280.00 |
| 11/1/2023 | Assignment Option | 49 | $280.00 |
| 11/1/2023 | Assignment Option | 100 | $280.00 |
| 11/1/2023 | Assignment Option | 104 | $280.00 |
| 11/1/2023 | Assignment Option | 1 | $280.00 |
| 11/1/2023 | Assignment Option | 2 | $280.00 |
| 11/1/2023 | Assignment Option | 17 | $280.00 |
| 11/1/2023 | Assignment Option | 4400 | $260.00 |
| 11/1/2023 | Assignment Option | 1900 | $260.00 |
| 11/1/2023 | Assignment Option | 3600 | $260.00 |
| 11/3/2023 | Assignment | 100 | $260.00 |

**SALES:**

| Date | Security | Quantity | Price Per |
|------|----------|----------|-----------|
| 9/20/2023 | PAYC Nov 17 '23 $260 Put | 50 | $9.50 |
| 9/21/2023 | PAYC Nov 17 '23 $260 Put | 50 | $11.40 |
| 9/26/2023 | PAYC Nov 17 '23 $280 Put | 100 | $30.76 |